SCHWARTZ ET AL., *v.* BOARD OF EDUCATION OF CARLISLE
    TOWNSHIP RURAL SCHOOL DISTRICT ET AL.

*Schools—Emergency bond issue to replace buildings—Section
7630-1, General Code—Injunction—Invalid order and record
of Department of Industrial Relations condemning buildings.*

Under the law re-organizing the state government, Sec-
tions 154-1 to 154-58, General Code, known as the Ad-
ministrative Code, the Director of the Department
of Industrial Relations is to "exercise the powers
and perform the duties vested by law in such de-
partment" (Section 154-3, General Code), the office of Chief
of Division of Factory Inspection, created by Section 154-6,
General Code, is under the "direction, supervision and con-
trol" of such Director, whose duty it is to prescribe the
duties that shall be performed by such Chief of Division
(Section 154-8, General Code), the making of an order by
the department prohibiting the use of school buildings is
an official act, required to be shown on the records of
such department (Section 154-18, General Code), and a let-
ter on the stationery of the department, not bearing the
seal of the department, and not signed by the department,
but merely signed "Yours truly, T. P. Kearns, Chief of Di-
vision," and mailed to a board of education, which letter
purports to prohibit the use of nine school buildings in
different parts of a school district (there being no record
in the department of the authority of such Chief, and no
record in the department of any official action taken in ref-
erence to such letter, but merely a carbon copy of the
letter kept on file), is not a valid order of such department
prohibiting the use of such school buildings for their in-
tended purpose and creating an emergency under Section
7630-1, General Code, and does not authorize the board of
education to issue and sell bonds to construct two new
school buildings to take the place of the nine school build-
ings, for the proper accommodation of the schools of the
district.

(Decided October 23, 1923.)

APPEAL: Court of Appeals for Lorain county.

*Mr. H. A. Pounds,* for plaintiffs.
*Mr. Lawrence Webber* and *Mr. Dan B. Symons,* prosecuting attorneys, and *Messrs. Fauver & Cheney,* for defendants.

WASHBURN, J. This case is before the court on appeal, upon amended pleadings filed after the case was submitted.

Plaintiffs, who are taxpayers and residents of Carlisle Township Rural School District, seek to enjoin the issuance and sale of $120,000 of bonds by the Board of Education of such school district.

This school district, for election purposes, is divided into two precincts—the east and west precinct—and the board maintains eight schools scattered throughout the district, conducted in buildings owned by the board, and also maintains two other schools conducted in rented property. The territory of the district is near Elyria.

The question of centralization of the schools of the district at a designated place was submitted to a vote of the district and defeated.

Thereafter the board, on June 25, 1923, by resolution, determined to issue bonds of such district in the sum of $120,000, for the purpose of providing funds for the erection of two new school buildings, one, to be built in the east precinct, to take the place of the present schools in that precinct, and one, in the west precinct, to accommodate all the pupils of that precinct, and the board levied a tax upon the taxable property of the district for the payment of the bonds and interest. This action of the board was taken without a vote

of the people either as to the issuance of the bonds or as to the levy of a tax in excess of the limitations fixed by general laws.

The board's right to do what is sought to be enjoined in this action depends upon the construction of Section 7630-1, General Code, as it read when the board took its action, and upon the further question of whether or not there was a lawful order prohibiting the use of the present school buildings, which order is essential to give the board a right to take action under the section.

In the discussion of the latter question we shall assume, without deciding, that, if there was a lawful order as a basis for the board's action, then the board was authorized to do what it is attempting to do.

Confining ourselves to the one question under discussion, Section 7630-1, General Code, as it was on June 25, 1923 (109 Ohio Laws, 343), provided that if the "use of any school house or school houses for their intended purpose is prohibited by an order of the Industrial Commission of Ohio or its successor in such authority," then the Board of Education could issue bonds and levy a tax to pay same for the purpose of constructing "a new school house for the proper accommodation of the schools of the district."

(Before this time the law required a vote of the people to authorize the board to take such action, and at this time the law as stated above, *i. e.,* in 109 Ohio Laws, page 343, had been amended so as to again require such vote of the people, and that amendment, while not yet in force, had been approved by the Governor and filed in the office of the Secretary of State on May 11, 1923.)

But the question here presented is as to the law as it was on June 25, 1923, that is, the question is: Was there a lawful order prohibiting the use of the schoolhouses of the district?

The order introduced in evidence, and by reason of which the board acted, was addressed to the clerk of the board, was signed "Yours truly, T. P. Kearns, Chief of Division," was dated June 1, 1923, and there was no seal attached thereto.

The law requires the order to be made by "the Industrial Commission of Ohio *or its successor in such authority.*"

At the time of the making of the order the authority to make such order had been taken away from the Industrial Commission by the act of the Legislature known as the "Administrative Code."

To construe this act and determine who is the "successor in such authority" of the Industrial Commission, it is necessary to refer to the state of the law before this change was made.

In 1914 the Industrial Commission was charged with the duty of inspecting schoolhouses and making orders in reference thereto, and was vested with the authority theretofore vested in the Chief Inspector of Workshops to inspect schoolhouses and issue orders in reference thereto (General Code, Sections 871-24, 1031 and 1032). The proceedings of the Commission were required to be shown on its record, which should contain the vote of each member of the Commission (Section 871-9, General Code), and an order made by one of its deputies, "when approved and confirmed by a majority of the members, *and so shown on its record of proceedings,*" was deemed to be the order of the Commission (Section 871-5, General Code).

The Commission had a seal of which courts were required to take judicial notice, and its orders, proceedings and records were proven by copies thereof certified by its secretary and under its seal (Section 871-8, General Code).

While it acted through deputies or chief inspectors in its various departments, an order in reference to school-houses, to be lawful, had to be the order of the Commission, shown on the records of its proceedings to be confirmed and approved.

To take the place of the Commission and to succeed to its rights and duties, so far as the matter under discussion is concerned, the Administrative Code created "The Department of Industrial Relations, *which shall be administered* by the *Director* of Industrial Relations, hereby created" (Section 154-3, General Code), and there was created in such Department of Industrial Relations the office of "Chief of Division of Factory Inspection." (Section 154-6, General Code.) The Director of the Department of Industrial Relations "may prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its business and the custody, use and preservation of the records, papers, books, documents and property pertaining thereto." (Section 154-8, General Code). The Department of Industrial Relations, which is conducted by its Director, is required "to provide for the keeping, within such department, of such records and journals as may be necessary *to exhibit its official actions and proceedings*" (Section 154-18, General Code), and it is required to have a seal which may be "affixed to any *writs* and

authentications of copies of records and *official papers,* and to such other instruments as may be authorized by law or prescribed by the proper authority" in the department; and "when so authenticated, any copy of such record, official paper, or other instrument shall be received in evidence in any court in lieu of the original." (Section 154-18, General Code).

The Department of Industrial Relations, *not* the chief of a division of the department, is required to make and file with the Governor a "report of *its* transactions and proceedings." (Sections 154-22 and 2264-1, General Code).

When this law went into effect we had this situation: The Industrial Commission was vested with the power and duty of the inspection of school-houses and the making of orders in reference thereto, which orders were required to be the orders of the Commission as shown on the record of its proceedings. The Legislature having created the Department of Industrial Relations provided that "the *Department* of Industrial Relations shall have all *powers* and *perform all duties* vested by law in the Industrial Commission," except in certain matters not involved in this inquiry. (Section 154-45, General Code).

It also provided that "whenever rights, powers or duties * * * are, by this chapter, transferred, either in whole or in part, to or vested in a *department created* by this chapter * * * such rights, powers and duties shall be vested in, and *shall be exercised by the Department* * * * to which the same are hereby transferred." (Section 154-24, General Code). Section 154-45, General Code, specifically transfers the rights, powers

and duties of the Industrial Commission in refer-
ence to inspection and orders in relation to school-
houses to the *Department of Industrial Relations,
not* to the *Chief of Division* of the department,
and it seems plain that such rights, powers and
duties must be exercised by the Department of
Industrial Relations, and that therefore the De-
partment of Industrial Relations and *not* the
*chief* of one of its divisions is the "successor in
such authority" mentioned in Section 7630-1, Gen-
eral Code.

That "successor in such authority" is required
to keep a record showing "its official actions and
proceedings" and has a seal by which such official
acts may be proven. That "successor in author-
ity" is administered by a Director, who "shall,
subject to the provisions of this chapter, exercise
the powers and perform the duties vested by law
in such department." (Section 154-3, General
Code, last paragraph). That "successor in author-
ity" was authorized at the time the claimed order
in question was made to make an order which
became a law binding upon the citizens of the
state, for the violation of which a specific and
severe penalty by way of fine was provided (Sec-
tion 1037, General Code), thus making the violator
of such an order a criminal, subject to arrest and
trial.

We know of no law which authorizes the head
of that department to delegate authority to a sub-
ordinate to make such an order in his own name,
without the same being passed upon and approved
by the head of the department and shown by the
official record of the proceedings of the depart-
ment to have been officially authorized or ap-

proved. And in any event such order must be shown on the official records of the proceedings of the department.

As we construe the law, such an order, to be lawful and enforceable, must be, and must purport to be, the act of the *department*, not that of a chief of division of the department, and must be evidenced by a proper record showing its official character and duly proven in the manner provided by the law already referred to.

It is true that the chiefs of divisions and other officers of a department are under the direction of the directors of their respective departments, "and shall perform such duties as such directors shall prescribe" (Section 154-8, General Code), but that does not authorize the director to confer authority upon the chief of a division to make on his own initiative and responsibility a law, which, although not set forth or referred to in the official records, may nevertheless be so binding and enforceable as to subject the violator thereof to prosecution for crime.

In this case the order attempted to be made purports to be merely the order of the "Chief of Division," not of the department; no certified copy under the seal of the department is produced showing any proceedings or official action of the department in reference thereto, although counsel in the case were requested to make search for and to produce such record, if there was such record, and sufficient time to do so was given by the court. And, later on, a report was made to the court that there was no such record in the Department of Industrial Relations, or in any division thereof. We therefore hold that no lawful order

was made which prohibited the use of the existing school buildings, and which created the emergency mentioned in Section 7630-1, General Code, so as to authorize such school board to issue and sell bonds without a vote of the people and levy a tax to pay the same.

This construction is in accordance with the view taken of these laws by the Legislature of Ohio in an act amending and supplementing Section 1031, General Code, which was passed by the Legislature on April 6, 1923, long before the claimed order in this case was made, and approved by the Governor on April 18, 1923, and filed in the office of the Secretary of State on April 19, 1923, the provisions of which act were, in contemplation of law, known to all of the parties to the transaction in question.

That law went into effect July 18, 1923, 48 days after the claimed order in question was made. It provides that after an inspection of a schoolhouse is made the inspector shall file with the Department of Industrial Relations a written report specifying necessary additions or alterations, and that thereupon the ''Department of Industrial Relations shall issue an order in writing'' (Section 1032, General Code) and cause the same to be duly served upon the Board of Education, and that such board may appeal to the Common Pleas Court (Section 1032-1, General Code), which is given authority to approve or set aside the order.

The significant provision is that when an appeal is so taken ''the Department of Industrial Relations shall make a complete transcript of the proceedings had before it and certify the same'' to the clerk of the court. (Section 1032-1, General

Code.) This plainly contemplates that the order appealed from is an official order of the *department,* of which there is a record kept, in accordance with Section 154-18, General Code, not simply a letter written by the chief of a division of the department.

While the act of the Legislature, not then being in force, was not binding upon the parties to this transaction, and the court is not required to take it into consideration in construing laws hereinbefore referred to, which were not changed by the act, still we think it proper to refer to it in justification of a construction of such laws which was reached without considering the act.

In view of our conclusion on this question, it is unnecessary to pass upon the question whether or not said emergency statute can properly be used to effect a centralization of the schools where such centralization has been voted down by the people. Injunction allowed as prayed for in the amended petition.

This judgment being in apparent conflict with a judgment upon the same question by the Court of Appeals of the Third District, the record of this case is certified to the Supreme Court for review and final determination.

*Injunction allowed.*

FUNK, P. J., and PARDEE, J., concur.

December 22, 1923.

WASHBURN, J. After the foregoing opinion was announced, it was made known to this court that the Attorney General's office desired to have the

case reopened, so that evidence might be introduced explaining the operation of the Department of Industrial Relations, with a view to showing that there was a lawful order issued in this case, and accordingly depositions of H. R. Witter, Director of the Department, and Thomas P. Kearns, Chief of Division of Factory Inspection, of the department, were taken and filed.

Waiving any questions as to the regularity of the taking of the depositions, we are of the opinion that the testimony contained in the depositions makes it certain that there was no lawful order issued, and relieves the case from any apparent conflict with the case in the Court of Appeals of the Third District, referred to in the foregoing opinion.

It now appears that no *official* action was taken in the matter of the claimed order. Thomas P. Kearns wrote a letter, and kept a copy of it, and that was all. As was stated before, the original letter is in evidence, and it is *not* under the seal of the department or any division thereof; it was issued by Kearns solely on his own responsibility, and without the knowledge or approval of the Director of the Department; there is no record of any *proceedings* in reference to the letter, or of any action on the part of the Director of the Department delegating to Kearns or the division of which he was chief any authority to make or issue an order of the character which said letter is supposed to be.

Here is a great department of the state government, the administration of which affects, either directly or indirectly, every part and every citizen of the state, a department the authority of

which is vested in one man, the director, a department the duties of which cannot be performed by one man, but requires the services of many men. It is hardly conceivable that it was the intention of the Legislature that the duties to be performed and the authority to be exercised by the Chiefs of Divisions of the Department should be left uncertain or unascertainable, or should depend upon mere vague, general conversation between the Chiefs and the Director; indeed, it seems to us very plain that the Legislature intended quite the contrary.

Section 154-3, General Code, provides that the Department of Industrial Relations "shall be administered by the Director" of that department; and Section 154-8, General Code, specifically provides that the Chief of Division of Factory Inspection "shall be under the direction, supervision and control" of the Director of the Department of Industrial Relations, and "shall perform such duties" as such Director "shall prescribe;" and Section 154-18, General Code, requires the Director of the Department to "provide for the keeping" of such "records and journals" as will exhibit the "official actions and proceedings" of the Department.

In view of these positive provisions of the law, it is plain that it is the duty of the Director to "prescribe," that is, "to lay down authoritatively as a guide, direction or rule," what duties the Chief of Division shall perform and what authority he shall exercise, and such defining of duties and authority of such Chief must be an *official* act, which must be evidenced by a permanent record.

If the authority of such chief to do a particular

act is not included in the general rule thus prescribed, there must be a *record* showing approval by the director.

According to the deposition of the director in this case, the only attempt to comply with the foregoing provisions of the law was the oral statement made by him to the Chief, as follows: "Upon assuming office the Chiefs of all Divisions were given specific instructions that they would be held strictly accountable for their specific departments in all its working conditions," and he testified that by such instruction his "intention was to clothe" the chief "with authority to do the work required" in his division. Then he testifies that "in most cases" he is consulted by the chief concerning orders issued by him, but that as to this claimed order the chief did not consult him "specifically at the time" the letter was written, and that he cannot "recall any specific questions" asked him in reference to it, either before or after the letter was written.

There was therefore no general or specific instructions given by the director in reference to the order in question, and there is a total absence of any record showing authority to issue the same or approval after issue.

While the exhibit attached to the petition, which is certified by the director to be a "true copy" of the order in question, has the seal of the department impressed thereon, and on each page thereof, it is quite evident that the director did not intend to certify that such seal was on the original, because he testifies that "upon assuming office I was not aware that a seal was specifically required and so it was not used," and the Chief of the Division who wrote the letter testifies that

he placed no seal thereon. Moreover, the original letter is in evidence and there is a total absence of any seal thereon.

We note, once again, that the letter was not signed, nor did it purport to be signed, by "The Department of Industrial Relations," but was simply signed "T. P. Kearns, Chief of Division."

Being of the opinion that there was no lawful order of "The Department of Industrial Relations" as a basis for the action of the school board, an injunction is allowed as prayed for in the amended petition.

In the recent decision of the Court of Appeals of the Third District, referred to in the opinion herein, there was no evidence showing that the Director of the Department had not complied with the statutes hereinbefore referred to, prescribing the duties of the Chief of the Division, thus clothing him with authority to issue the order involved in that case, and the court indulged the presumption that the director had done his duty and that the chief therefore had authority, and when our first opinion was rendered, before the depositions were filed, we declined to act upon such a presumption and therefore found our opinion in conflict with the decision of the Third District, but since the filing of the depositions it is made clear that there is no occasion for the application of any such presumption. The cases, therefore, are not in conflict, and this case cannot be certified as ordered in the original opinion.

*Decree granting injunction to plaintiffs.*

Funk, P. J., and Pardee, J., concur.