Matthias, J.
 

 The bonds in question, amounting to $251,000, were issued pursuant to the provisions of Section 7630-1, General Code,' upon the theory that the use of the school building in the Versailles village school district had been prohibited by a valid order of the Department of Industrial Relations. The validity of that order is challenged, and all other questions presented by the record are subordinate thereto, hence the necessity of their consideration is dependent upon our view of the issue made as to the validity of such order. In our present discussion we shall assume, without deciding, that the order in question prohibits the use of said building. At the time of the passage by the board of education of the resolution for the issuance of bonds to provide funds for the erection of a new school building, Section 7630-1, General Code (109 O. L., 343), authorized the board of education to issue bonds and levy a tax to pay the same, using the fund derived therefrom to construct a sehoolhouse for the proper accommodation of the schools of the district if the “use of any schoolhouse or sehoolhouses for their intended purpose is prohibited by an order of the Industrial Commission of Ohio or its successor in such authority.” The reo ord discloses that the so-called order is in the nature of a letter written upon the letter head of the Division of Workshops', Factories, and Public Buildings, T. P. Kearns, Division Chief, Department of Industrial Relations of the state, and is addressed to the clerk of the board of education.
 
 *412
 
 It states that an inspection was made of the Versailles village school on February 12, 1923, and that in consequence “the following order is issued.” Requirements are then stated which are, in -substance, as follows:
 

 (1) It will be necessary to install a heating and ventilating system in accordance with ISlection 21, p. 2, tit. 3, of the state Building Code; (2) place all wiring in approved metal conduits in -accordance with said Code; (3) provide additional glass area in various portions of the building as therein set forth; (4) replace defective treads in stairway; (5) repair defective floors; (6) provide standard hardware on exits where locks are defective, stating that the use of the building is prohibited for school purposes on and after September 1, 1923, “unless the above orders -are complied with in their entirety”; (7) discontinue use of the room in the basement theretofore used for domestic science; and (8) take immediate steps to provide additional room to care for the overcrowded condition in the high school. After directing attention to certain sections of the General Code, the communication closes as follows:
 

 “Awaiting notification immediately upon compliance-, I am, Yours truly, T. P. Kearns, Chief of Division.
 

 “Replying mention School Order No. 224.”
 

 It is contended that the Department of Industrial Relations is the “successor in such authority” of the Industrial Commission of Ohio and that the comm,unication above referred to is not a valid order of the Department of Industrial Relations, and is not an order whereon may be predicated the
 
 *413
 
 issuance of bonds to provide funds for the erection of a new sehoolhouse pursuant to and by virtue of the provisions of Section 7630-1, General Code.
 

 Referring to the history of the legislation upon the subject, it is to be observed that by virtue of the provisions of Section 871-1
 
 et seq.,
 
 General Code, enacted March 12, 1913 (103 O. L., 95), the powers and duties, which prior to September 1, 1913, devolved upon the chief inspector of workshops and factories, were on the latter date conferred upon the Industrial Commission, and, thereafter, its findings and orders were required to warrant action of the board of education pursuant to the provisions of Section 7630-1, General Code,
 
 Kinsinger
 
 v.
 
 Board of Education of De Graff Village School Dist.,
 
 101 Ohio St., 298, 127 N. E., 874. A record of its proceedings was required to be kept, and any such order to be valid was required to have the approval of a majority of the members of the commission and be so shown on such record. This provision so remained until the enactment of the so-called Administrative Code, when all the powers and duties of the Industrial Commission in the respect in question here were transferred to the Department of Industrial Relations. It may be stated, however, that in 1921, Section 7630-1, General Code, was amended, eliminating the requirement of a favorable vote of the people as a prerequisite to the issuance of bonds and providing that such bonds could be issued if the use of the sehoolhouse had been prohibited by an order of “the Industrial Commission or its successor in such authority.”
 

 The Department of Industrial Relations was ere
 
 *414
 
 ated by the provisions of Section 154-3, General Code, which provided that it should be “administered by the director of Industrial Relations,” and it is also provided by Section 154-3 that “The director of each department shall * *
 
 *
 
 exercise the powers and perform the duties vested by law in such department.”
 

 While by this act he was authorized to prescribe regulations for the government of his department, and so forth, it was required by Section 154-18 that there be provided and kept within such department “such records and journals as may be necessary to exhibit its official actions and proceedings.” The same section also requires each department to have a seal, which may be affixed to writs and authentications of copies of records and official papers, and to such other instruments as may be authorized by law or prescribed by the proper authority.
 

 It is pointed out that by the provisions of Sections 154-6 and 154-8, General Code, chiefs of divisions of said department are created, one of them being chief of the division of factory inspection, and that under the direction, supervision, and control of the director of the department he may perform such duties as the director prescribes. It seems rather significant however that the Legislature did not confer those powers and duties upon the office of chief of the division of inspection, but, on the contrary, by the provisions of Section 154-24, General Code, provided that:
 

 “Whenever rights, powers or duties which have heretofore been vested in or exercised by any officer, board, commission, institution or depart
 
 *415
 
 ment, or any deputy, inspector or subordinate officer thereof, are, by this chapter, transferred, either in whole or in part, to or vested in a department created by this chapter, or any other department, office or institution, such rights, powers and duties shall be vested in, and shall be exercised by the department, office or institution to which the same are hereby transferred, and not otherwise.”
 

 Had it been intended by the Legislature that no more should be required than the mere finding and direction of the chief of the division of inspection, it would have been very easy to have so stated in language similar to that conferring such authority by the statutes in force prior to the enactment of the provision transferring that authority to the Industrial Commission. The rule' of construction seems applicable that the presumption arises that the Legislature intended some change in the effect and operation of the law by a substantial change in the language of the statute. In view of the specific language employed, conferring such powers upon the Department of Industrial Eelations, including authority to make orders peremptory in character, upon which a board of education may predicate its action, without a vote of the people, to issue and sell large amounts of bonds and levy taxes beyond limitations otherwise provided by statute, orders for the violation of which severe penalties are prescribed *and may be exacted, those powers should not be extended by judicial construction beyond the import of the language used by the Legislature
 
 *416
 
 in conferring them. On the contrary snch provisions should be strictly construed.
 

 In this instance it does not appear that there was any record in the Department of Industrial Relations, of any official action taken by the department with respect to the matter in question, nor was such matter acted upon by the department, either directly or by authorizing such action by the chief inspector, or by approving same, except by an attempted approval subsequent to the action of the board of education and subsequent to the institution of this suit. Indeed, the only thing that is 'disclosed either in the records or the files of the department is the copy of the letter heretofore referred to, which was in the files of the chief of division, the original of which contained his rubber stamp signature placed thereon by some one in that division; but of this the chief of the division apparently had no knowledge or recollection, and at the time his deposition was taken in this, case could not say whether he ever knew that “this particular order was stamped or not.” The record discloses that an inspection of said school building was made by an inspector in the department, on the direction of the chief of division, pursuant to a request of the board of education communicated by letter of the clerk, and also' personally by an architect, and that the power to make such order was delegated by the chief of division, Kearns, to whoever was authorized to1 stamp his name on it. „
 

 The doctrine of contemporary construction and application of these provisions by this' administrative department, urged by counsel, can be given
 
 *417
 
 no consideration whatever, even if it appear that the very material amendment of the statute in 1921 had been consistently disregarded. Such action and authority therefor were challenged in the case of
 
 Schwartz
 
 v.
 
 Board of Education of Carlisle Twp. Rural School
 
 Dist., 18 Ohio App., 17, and. were denied by the decision and opinion of the Court of Appeals of Lorain county, October 23, 1923. It is our view, therefore, that the rule of long-continued construction and application of a statute as so construed can be given no effect.
 

 For the reasons stated we are of the opinion that the so-called order of the chief of division of inspection is not an order whereon may be predicated the action of the board of education in proceeding to issue bonds for the erection of a school building pursuant to the provisions of Section 7630-1, General Code. This has reference particularly
 
 to
 
 the $251,000 of bonds for the erection of a school building. Bonds were issued at the same time in the sum of $5,000, under Section 7029, General Code, to procure funds with which to buy a site for the proposed building., lOoneed- ■ edly this action was in excess of the power conferred by the provisions of Section 76291, General Code, under which the board of education assumed to act in that respect. The action of the board with reference to these two issues of bonds, providing funds for a site and for the erection of a building thereon, was one transaction, and presumably the one would not have been sanctioned without the other. In view of this situation we are not disposed to approve the portion of the $5,000 issue authorized by Section 7629, General
 
 *418
 
 Code, and hold invalid only the portion which is in excess of the board's authority, as might possibly be done under other circumstances.
 

 Our conclusion therefore is that the judgment of the Court of Appeals should be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Day, Allen, Kinkade and Robinson, JJ., concur.