

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-1994

# IN RE: A.M.

Precedential or Non-Precedential:

Docket 93-7736

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"IN RE: A.M." (1994). *1994 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 93-7736
_____


GOVERNMENT OF THE VIRGIN ISLANDS
IN THE INTEREST OF:
A.M., A Minor,

A.M., A Minor,
Appellant


_____


ON APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
Division of St. Thomas and St.John
(D.C. Criminal No. 92-00071)
_____


Argued:  April 18, 1994
Before:  STAPLETON, ALITO, and WEIS, Circuit Judges

(Opinion Filed: August 16, 1994)


_____


BRENDA SCALES (Argued)
Territorial Public Defender
8191 Subbase, Ste. 16
P. O. Box 6040
Charlotte Amalie
St. Thomas, VI  00804

Attorney for the Appellant

ROSALIE SIMMONDS BALLENTINE
Attorney General

PAUL L. GIMENEZ
Solicitor General

ROBERT BORNHOLT (Argued)
DEANA M. BOLLING
Assistant Attorney General
DEPARTMENT OF JUSTICE
8050 Kronprindsens Gade, Suite 1

Charlotte Amalie
St. Thomas, VI  00802

Attorney for Government of the Virgin Islands

_____

OPINION OF THE COURT
_____

ALITO, Circuit Judge:

This appeal concerns an order transferring a juvenile for prosecution as an adult.  We hold that such a transfer order is subject to pretrial appeal under the collateral order doctrine, and we reject the juvenile's argument that the transferring court committed various procedural errors, including the admission of hearsay in violation of due process and Virgin Islands law.  We therefore affirm the decision of the Appellate Division of the District Court, which sustained the transfer.

I.

In November 1991, a juvenile delinquency complaint was filed against A.M., who was then 16 years old.  The complaint alleged that, on the previous day, A.M. had engaged in conduct that, if committed by an adult, would have constituted the felonies of first-degree rape, first-degree unlawful sexual contact, first-degree assault, conspiracy, and kidnapping for rape.  In early December 1991, the Government of the Virgin Islands filed a motion requesting that A.M. be transferred for prosecution as an adult.  After a hearing in May 1992, the Family Division of the Territorial Court issued an order granting that

motion.  In October 1992, the Appellate Division of the District

Court affirmed that order, and A.M. then took this appeal to our

court.


                                II.

        Before addressing A.M.'s arguments, we will first

explain why we have jurisdiction to entertain his appeal.  Under

28 U.S.C. § 1291[1] and 48 U.S.C. § 1613a(c),[2] we have jurisdiction

over all "final decisions" of the District Court of the Virgin

Islands, including "all final decisions of the district court on

appeal from the courts established by local law," 48 U.S.C. §

1613a(c).  Although the Appellate Division order from which this

appeal was taken is not a "final order" in the ordinary sense,

four other courts of appeals have held that district court orders

transferring juveniles for prosecution as adults under the

federal transfer statute, 18 U.S.C. § 5023, fall within the

---

[1].  28 U.S.C. § 1291 provides in pertinent part:

> The courts of appeals (other than the
> United States Court of Appeals for the
> Federal Circuit) shall have jurisdiction of
> appeals from all final decisions of the
> district courts of the United States . . .
> and the District Court of the Virgin Islands,
> except where a direct review may be had in
> the Supreme Court.

[2].  48 U.S.C. § 1613a(c) provides in pertinent part:

> The United States Court of Appeals for
> the Third Circuit shall have jurisdiction of
> appeals from all final decisions of the
> district court on appeal from the courts
> established by local law.

collateral order doctrine and are therefore appealable before trial. In re Sealed Case, 893 F.2d 363 (D.C. Cir. 1990); United States v. Smith, 851 F.2d 706 (4th Cir. 1988), cert. denied, 112 S. Ct. 414 (1991); United States v. A.W.J., 804 F.2d 492 (8th Cir. 1986); United States v. C.G., 736 F.2d 1474 (11th Cir. 1984). Cf. Guam v. Kingsbury, 649 F.2d 740 (9th Cir. 1981), cert. denied, 454 U.S. 895 (1981) (holding, based on different reasoning, that transfer order under Guam statute is subject to pretrial appeal). These four courts of appeals have reasoned that such orders represent the district court's final decision on the transfer question, that this question is separate from the merits of the prosecution, and that the denial of appellate review until after the juvenile has been tried as an adult would cause the irreparable loss of some of the statutory protections offered to juvenile offenders, such as protection from disclosure of court records. For essentially the reasons explained in these decisions, we are persuaded that the Appellate Division's order in this case falls within the collateral order doctrine and is thus appealable.

We likewise hold that the Appellate Division of the District Court had jurisdiction to hear A.M.'s appeal from the decision of the Family Division of the Territorial Court. Under 48 U.S.C. § 1613a(a), the District Court currently has "such appellate jurisdiction over the courts of the Virgin Islands established by local law," and V.I. Code Ann. Tit. 5, § 2508(d) specifically provides that a juvenile transfer order of the Family Division is a "final appealable order." Moreover, the

general appellate jurisdiction of the District Court extends at least to review of "final" decisions of the Territorial Court,[3] and the Territorial Court's transfer order in this case was, as previously discussed, "final" within the meaning of the collateral order doctrine.

While we thus hold that transfer orders such as the one at issue in this case are subject to two levels of appellate review, we must express our concern about the potential for delay that such appeals may produce. In the future, we believe that appeals of transfer orders should be treated much like appeals of detention orders. See 18 U.S.C. § 3145(c). The parties should alert the Appellate Division and our court to the nature of the appeal and request expedited disposition. The parties should then be required to comply with short briefing deadlines; extensions should be granted only in extreme situations; and such cases should be given priority on the docket.

---

[3]. V.I. Code Ann. tit. 4, § 33, provides that the district court has appellate jurisdiction to review the "judgments and orders" of the territorial court in all juvenile and domestic relations cases, as well as in "all civil cases" and "all criminal cases in which the defendant has been convicted, other than on a plea of guilty." The District Court of the Virgin Islands has interpreted this reference to "judgments and orders" as meaning "final judgments and orders." Creque v. Roebuck, 16 V.I. 225, 227 (D.V.I. 1979) (emphasis in original). See also, e.g., Government of the Virgin Islands v. deJongh, D.C. Civ. App. No. 92-214, 1993 U.S. Dist. LEXIS 9402 (1993); Archer v. Aero Virgin Islands Corp., D.C. Civ. App. No. 92-18 (D.V.I. Sept. 28, 1992). Assuming for the sake of argument that V.I. Code Ann. tit. 4, § 33, contains this limitation, we nevertheless hold, for the reasons explained in text, that the Territorial Court's order was appealable.

                                    III.

          Turning to the merits of this appeal, we first address

A.M.'s argument that the Family Division judge did not properly

consider the likelihood of his rehabilitation if he was found to

have committed the alleged offenses.  Under the transfer

provision applicable here, V.I. Code Ann. tit. 5, § 2508(a), the

Family Division "may" transfer a juvenile for adult prosecution

if the juvenile was at least 16 years old at the time of the

alleged offense, and the alleged offense would constitute a

felony if committed by an adult.  While this provision commits

the transfer decision to the sound discretion of the Family

Division,[4] another provision, V.I. Code Ann. tit. 5, § 2509(d),

provides that evidence of seven specified factors "shall be

considered in determining transfer."  These factors are:

> (1)  the seriousness of the alleged
> offense to the community and whether the
> protection of the community requires waiver;
>
> (2)  whether the alleged offense was
> committed in an aggressive, violent,
> premeditated or willful manner;
>
> (3)  whether the alleged offense was
> against property, greater weight being given
> to offenses against persons, especially if
> personal injury resulted;
>
> (4)  whether there is probable cause to
> believe that the offense charged has been
> committed and that the child has committed
> it;

---

[4].  Cf. United States v. G.T.W., 992 F.2d 198, 199 (8th Cir.
1993) (federal transfer statute); United States v. Romulus, 949
F.2d 713, 715 (4th Cir. 1991), cert. denied, 112 S. Ct. 1690
(1992); United States v. Doe, 871 F.2d 1248, 1252 (5th Cir.),
cert. denied, 493 U.S. 917 (1989).

(5) the sophistication and maturity of the child as determined by consideration of his home, emotional attitude and pattern of living;

(6) the record and previous history of the juvenile, including previous contacts with the Youth Services Administration, law enforcement agencies and courts, and prior periods of probation or prior commitments to residential institutions;

(7) the prospects for adequate protection of the public and <u>the likelihood of reasonable rehabilitation of the child, if found to have committed the alleged offenses</u>.

<u>Id</u>. (emphasis added).

In deciding that A.M. should be transferred, the Family Division judge specifically discussed all of these factors, including the factor of rehabilitation. In her oral findings, she noted that the only witness who testified concerning rehabilitation was a social worker from the Virgin Islands Department of Human Services named Vaughn A. Walwyn and that Walwyn had testified without contradiction that there were no programs for juvenile sexual offenders in the Virgin Islands. App. 123. The judge thus concluded that there was "nothing available" or at least "nothing that [had] come to the Court's attention" that created "a likelihood of reasonable rehabilitation" for A.M. if he was treated as a juvenile and was found to have committed the offenses charged. <u>Id</u>.

The Family Division judge again addressed the question of rehabilitation in her written transfer order. There, she made the following finding:

> That the testimony elicited at the hearing disclosed that there is no program of rehabilitation in the Virgin Islands for minors who are found delinquent of the crime with which the minor is charged.

App. 20.

In attacking the decision of the Family Division, A.M. suggests that the court erred because it did not consider whether he could be rehabilitated if sent to a juvenile facility outside the Virgin Islands. See Appellant's Br. at 13, 17-18. We disagree with this argument. The Virgin Islands transfer statute required the Family Division to consider evidence concerning "the likelihood of reasonable rehabilitation" of A.M. if he was found to have committed the alleged offense, V.I. Code Ann. tit. 5, § 2509(d)(7). This language does not expressly require that the court survey the availability of suitable rehabilitation facilities in other jurisdictions, and we see no reason to suppose that the Virgin Islands Legislature intended to impose any such inflexible requirement. If A.M.'s attorney was aware of specific, suitable facilities outside the Virgin Islands, she could have called them to the judge's attention. In that event, the Family Division judge could have considered whether sending A.M. to any of these facilities represented a "reasonable rehabilitation" plan under all of the circumstances, including the cost to the Government of the Virgin Islands. It does not appear, however, that A.M.'s attorney identified any particular facility outside the Virgin Islands, and we consequently do not believe that the judge erred in limiting her consideration to the

facilities and programs that had "come to the Court's attention." App. 123.

In a related argument, A.M. seems to suggest that the Family Division should not have considered his likelihood of rehabilitation in light of the juvenile facilities that the Government of the Virgin Islands has chosen to create but should have instead considered his likelihood of rehabilitation in light of the juvenile facilities that he believes the Government should have created. We disagree with this argument as well. It seems most unlikely that the Legislature of the Virgin Islands, when it provided in V.I. Code Ann. tit. 5, § 2509(d)(7), that the Family Division must consider a juvenile's "likelihood of reasonable rehabilitation," meant to require or authorize the Family Division to decide whether the Legislature had provided for the creation of adequate juvenile facilities. Rather, we believe that the Legislature meant to require the Family Division to consider the likelihood of a juvenile's rehabilitation in light of the facilities and programs then available. Here, the Family Division judge carried out that responsibility.

IV.

A.M. next argues that the juvenile delinquency complaint did not comply with the requirements of V.I. Code Ann. tit. 5, § 2510(a), which provides that such "[c]omplaints shall be verified and may be signed by any person who has knowledge of the facts alleged." In this case, the complainant, Detective Merlin Wade, did not personally sign either the complaint or the

verification. Instead, both are signed by another person "for M. Wade." App. 32, 33.

We do not reach the question whether this mode of signing or verification satisfied the statutory requirements because we do not believe that the formal correctness of the complaint is an issue that is properly before us in this appeal. The sole question that we may consider at this time under the collateral order doctrine concerns A.M.'s transfer for prosecution as an adult under V.I. Code Ann. tit. 5, § 2508(b). The factors that must be considered in such a transfer decision are carefully set out in V.I. Code Ann. tit. 5, § 2509(d), and the formal correctness of the juvenile delinquency complaint is not among them. If A.M. is ultimately tried and convicted as an adult, and if his argument concerning the form of the juvenile delinquency complaint is not mooted by the filing of a new complaint or information, he will be able to obtain appellate consideration of his argument at that time.

V.

A.M. next argues that the transfer decision should be overturned because the so-called "transfer summary" prepared by the Virgin Islands Department of Human Services recounted a statement that the previously mentioned social worker, Vaughn A. Walwyn, elicited from him in violation of V.I. Code Ann. tit. 5, § 2512. While we agree with A.M. that this statement was not admissible against him, we hold that A.M. was not entitled to the relief he sought in the Family Division, namely, the striking of

the entire "transfer summary" submitted by the Department of Human Services and/or the denial of transfer.

Prior to a transfer hearing, the Virgin Islands Police Department and the Department of Human Services must submit written reports to the court concerning the factors that the court is required to consider. V.I. Code Ann. tit. 5, § 2509(e).[5] The police report must address the first four factors listed in V.I. Code Ann. tit. 5, § 2509(d), all of which relate to the offense or offenses charged, and the Department of Human Services report must address the remaining three factors, all of which concern the juvenile's character, background, and history. Such reports or "transfer summaries" were submitted in this case.

The summary submitted by the police department set out the version of the events disclosed by its investigation. According to this account, a young woman named D.B., then 16 years old, was sitting in a classroom in her high school at approximately 11:15 a.m. when A.M. and an adult, Jacob Mark, entered the room. A.M. and Mark fondled D.B. "while she tried to evade them and repeatedly told them to stop." App. 86. A.M. and Mark then dragged her into a smaller room and barricaded the door, and A.M. raped D.B. while Mark held her down. Id.

The summary submitted by the Department of Human Services properly contained sections discussing A.M.'s "social

---

[5]. V.I. Code Ann. tit. 5, § 2509(e), refers to the Youth Services Administration, rather than the Department of Human Services. Under V.I. Code Ann. tit. 3, § 437, however, this is deemed to be a reference to the Department of Human Services.

history," family, and previous referrals and court convictions. However, the summary also contained several paragraphs setting out the version of the incident in question that had allegedly been provided by A.M. to Walwyn. According to this version, after A.M. and Mark entered the classroom, A.M. conversed with D.B., eventually asked her to have sexual intercourse, and secured her consent. She then followed him into an adjacent room, and they engaged in consensual intercourse while Mark guarded the door from the inside. When they later left the room, D.B.'s friends asked her what had happened, and she broke out in tears. A.M. allegedly speculated that D.B. had concocted the rape allegation because of fear of her parents' reaction if they learned what she had done. App. 92.

Under V.I. Code Ann. tit. 5, § 2512, a juvenile's statements to law enforcement officers, the Attorney General, or employees of the Department of Human Services are inadmissible against the juvenile unless, among other things, "a parent or guardian who does not have an adverse position, a friendly adult, or the child's attorney was present at the interrogation when [the] statement was given." These requirements were apparently not met when A.M. made his statement to Walwyn.

Based on this failure to comply with the requirements set out in V.I. Code Ann. tit. 5, § 2512, A.M.'s attorney filed a motion to strike the entire transfer summary submitted by the Department of Human Services, and she argued in a supporting memorandum that without this summary A.M. could not be transferred. See App. 46-50. In response, the government argued

that the transfer summary should not be stricken and that at most "the appropriate remedy" would be for the court to strike Walwyn's account of A.M.'s statements. Id. at 58. A.M.'s attorney, however, submitted a reply insisting that the entire Department of Human Services' transfer summary be stricken.[6] Id. at 78. See also id. at 67. Later, at the conclusion of the transfer hearing, when A.M.'s attorney again argued that his statement had been improperly obtained and that "the whole transfer summary should be stricken," the Family Division judge replied: "The whole transfer summary should be stricken? . . . Even though [it's] authorized by the statute?" Transfer Hearing Tr. at 186-87. The court subsequently asked: "[W]hat does all that have to do with my determination . . . on whether to transfer or not?" Id. at 188. When A.M.'s attorney continued to insist that the summary be stricken, the judge stated:

> All right. Well, the transfer summary is
> authorized by the statute. If you are going
> to move it to be stricken, when [it's]
> mandated by the statute . . . then I'm not
> going to strike it.

Id.

---

[6]. A.M.'s attorney contended that it would be insufficient to strike only the portion of the summary recounting A.M.'s statement to Walwyn, as the government had suggested, because A.M.'s statement had also influenced the section of the summary labelled "Impressions and Evaluation," which contained an observation by Walwyn that A.M. had not shown remorse. Id. at 67. A.M.'s attorney then argued that if this section of the summary were also stricken, the summary would not comply with V.I. Code Ann. tit. 5, § 2509(d) and (e) (see App. at 67), and that consequently the entire summary would have to be stricken, and transfer would have to be denied. Id. at 78.

Based on the written submissions of A.M.'s counsel and the colloquy summarized above, it appears to us that the only relief that A.M.'s counsel sought from the Family Division was the striking of the entire summary submitted by the Department of Human Services or the denial of the transfer motion. These requests were overly broad and were therefore properly denied. While A.M.'s counsel would have been entitled under V.I. Code Ann. tit. 5, § 2512, to have her client's statement stricken from the record, she never requested that narrower relief.

Moreover, we see no indication whatsoever that the Family Division judge considered A.M.'s statement or any evidence derived from that statement in making her transfer decision. The judge made no reference to the statement or any evidence derived from it in her oral findings or her written order. In addition, the judge repeatedly suggested, as we believe the previously quoted excerpts from the record demonstrate, that she saw no connection between the improper questioning of A.M. and the transfer determination. Her view was summarized by her statement: "[W]hat does all that have to do with my determination as on whether to transfer or not?" Id. at 188. Furthermore, since A.M.'s statement, as recounted in the transfer summary, was entirely exculpatory, it carried little potential for prejudice.[7] For these reasons, we hold that the erroneous

_____

[7]. The dissent argues that A.M. might have been prejudiced because his statement led Walwyn to observe that A.M. had not shown remorse. As we interpret the record, however, A.M.'s attorney never specifically asked the Family Division judge to strike or disregard this statement (as opposed to striking the entire transfer summary of the Department of Human Services),

inclusion of A.M.'s statement in the Department of Human Services transfer summary does not require reversal of the transfer decision.

VI.

A.M.'s last argument is that the Family Division judge erred in permitting Detective Wade, during his testimony at the transfer hearing, to relate the accounts of the incident that were given by the alleged rape victim and by other witnesses. A.M. argues that hearsay is not admissible to establish probable cause at a transfer hearing.

A.M. seems to suggest that the admission of hearsay in this context violates the Due Process or Confrontation[8] Clauses

(..continued)
(see footnote 6, supra), and we are reluctant to overturn a decision of the Family Division for failing to do something that that court might well have done if A.M.'s attorney had only made the request.  Moreover, A.M.'s brief on appeal does not even mention Walwyn's statement about A.M.'s lack of remorse, and this brief adheres to the all-or-nothing position that "[t]here was no way to rectify the wrong other than to exclude the entire transfer summary."  Appellant's Br. at 24.  Furthermore, there is nothing in the record to suggest that the Family Division judge relied on Walwyn's observation about A.M.'s lack of remorse and, in any event, that observation does not seem particularly prejudicial.  Unless it is assumed that A.M. actually committed the offenses charged, one would not expect him to be especially remorseful or sympathetic toward D.B., who had caused his arrest. Thus, because we see no basis for concluding that the Family Division judge assumed that A.M. was guilty, we do not think that Walwyn's observation was particularly prejudicial.

[8].  The Confrontation Clause of the Sixth Amendment applies only to "criminal prosecutions," and juvenile proceedings have not been held to be criminal proceedings.  See, e.g., Middendorf v. Henry, 425 U.S. 25, 37-38 (1976); McKeiver v. Pennsylvania, 403 U.S. 528, 541 (1971) (opinion of Blackmun, J.); id. at 553 (Brennan, J., concurring); In re Gault, 387 U.S. 1, 30 (1967); Sadler v. Sullivan, 748 F.2d 820, 824 n.12 (3d Cir. 1984).  It

as made applicable to the Virgin Islands by 48 U.S.C. § 1561.  He relies on Kent v. United States, 383 U.S. 541, 562 (1966), in which the Supreme Court held that procedures at a juvenile transfer hearing must "measure up to the essentials of due process and fair treatment."  The Kent Court added, however, that it did not mean that the hearing must conform with "all of the requirements of a criminal trial or even of the usual administrative hearing," id.  Following Kent, many courts have held that the Constitution permits use of hearsay at such hearings.  See, e.g., United States v. Doe, 871 F.2d at 1255 (5th Cir. 1989); United States v. E.K., 471 F. Supp. 924, 930 (D. Or. 1979); People v. Taylor, 391 N.E.2d 366, 372 (Ill. 1979); Clemons v. State, 317 N.E.2d 859, 863-67 (Ind. Ct. App. 1974), cert. denied, 423 U.S. 859 (1975); State v. Wright, 456 N.W.2d 661, 664 (Iowa 1990); Hazell v. Maryland, 277 A.2d 639, 644 (Md. Ct. Spec. App. 1971); Commonwealth v. Watson, 447 N.E.2d 1182, 1185 (Mass. 1983); Matter of Welfare of T.D.S., 289 N.W.2d 137, 140-41 (Minn. 1980); G.R.L. v. State, 581 S.W.2d 536, 538 (Tex. Civ. App. 1979); In re Harbert, 538 P.2d 1212, 1217 (Wash. 1975); State v. Piche, 442 P.2d 632, 635 (Wash. 1968), cert. denied, 393 U.S. 969 (1968), and cert. denied, 393 U.S. 1041 (1969).  Cf. O.M. v. State, 595 So.2d 514, 516 (Ala. Crim. App. 1991), cert. quashed, 595 So.2d 528 (Ala. 1992) (hearsay admissible in juvenile

(..continued)
thus appears that the constitutionality of admitting hearsay in this case should be judged under principles of due process.  See In re Gault, 387 U.S. at 30; Kent v. United States, 383 U.S. 541, 562 (1966).

transfer hearing except when it violates rights of cross-examination or confrontation).  We agree with the weight of this authority.

It is settled that the Constitution permits the use of hearsay to show probable cause in a number of contexts.  For example, it is constitutional to rely on hearsay to establish probable cause for an arrest.  See, e.g., United States v. Matlock, 415 U.S. 164, 173 (1974); United States v. Ventresca, 380 U.S.102, 107-08 (1965); Brinegar v. United States, 338 U.S. 160, 173-74 (1949).  The Constitution also permits a grand jury to rely on hearsay in finding that there is probable cause to believe that a defendant committed a criminal offense.  Costello v. United States, 350 U.S. 359, 361-63 (1956).  Likewise, Rule 5.1 of the Federal Rules of Criminal Procedure provides that "[t]he finding of probable cause [at a preliminary examination] may be based upon hearsay evidence in whole or in part," and we assume that this provision is constitutional.

A probable cause determination under Fed. R. Cr. P. 5.1(a) is closely analogous to the probable cause determination made by the Family Division in this case, i.e., that there was probable cause to believe that A.M. committed the offenses with which he was charged.  To be sure, Rule 5.1(a) applies to proceedings against adult defendants, whereas transfer proceedings involve juveniles, but we are not aware of any decision of the Supreme Court or of this court holding that the Constitution imposes stricter evidentiary standards in juvenile than in adult proceedings.  On the contrary, the Supreme Court

has stated that juvenile proceedings need not be conducted in conformity with all of the formal procedural requirements applicable in criminal trials. In re Gault, 387 U.S. at 30; Kent, 383 U.S. at 562. Consequently, we are convinced that the admission of hearsay to establish probable cause in a juvenile transfer proceeding is constitutionally permissible.

Contrary to A.M.'s argument, we also believe that Virgin Islands law permits the admission of hearsay in this context. We have not found any Virgin Islands statute or court rule that addresses this specific question. However, Rule 7 of the Rules of the Territorial Court provides that "[t]he practice and procedure in the territorial court shall conform as nearly as may be to that in the district court in like causes, except where there is an express provision in the law or these rules to the contrary." We therefore examine whether hearsay would be admissible in a juvenile transfer proceeding in district court.

Rule 1101(a) of the Federal Rules of Evidence provides that these rules apply to the District Court of the Virgin Islands, as well as to the federal district courts. Subsections (b) and (e) of Rule 1101 then list certain proceedings in which the Federal Rules of Evidence apply in whole or in part, and subsection (d) lists certain proceedings in which the rules do not apply, except with respect to privileges. Unfortunately, neither juvenile proceedings in general nor juvenile transfer proceedings in particular are listed in any of these subdivisions. Moreover, while subsection (b) states that the rules apply generally to all "civil actions and proceedings" and

to all "criminal cases and proceedings," juvenile transfer proceedings do not fall neatly into either of these categories. Even a proceeding on the merits of a juvenile delinquency charge cannot easily be categorized as either "civil" or "criminal." See McKeiver v. Pennsylvania, 403 U.S. at 541 (Opinion of Blackmun, J.). More importantly, the proceeding at issue here -- a transfer hearing -- is of a preliminary nature and is consequently not comparable to a civil or criminal trial.

For this reason, the only federal courts that have considered the question have held that the provision of the Federal Rules of Evidence that most closely applies to transfer proceedings is Rule 1101(d)(3), which states that the Federal Rules of Evidence (except with respect to privileges) do not apply to preliminary examinations in criminal cases. See United States v. Doe, 871 F.2d at 1255 & n.2; United States v. E.K., 471 F. Supp. at 930. We agree with this analysis, and we therefore conclude that under the Federal Rules of Evidence, hearsay is admissible to establish probable cause in juvenile transfer hearings. By virtue of Rule 7 of the Rules of the Territorial Court, it follows that hearsay was admissible for this purpose in A.M.'s case.

VII.

For these reasons, we affirm the decision of the Appellate Division of the District Court.

GOVERNMENT OF THE VIRGIN ISLANDS IN THE

INTEREST OF: A.M., A MINOR, No. 93-7736


STAPLETON, J., Concurring and Dissenting:


I join all of the opinion of the court except Section
V. Because I believe social worker Walwyn's interrogation of
A.M. about the alleged crime in the absence of, and without
notice to, his attorney violated A.M.'s constitutional right to
counsel as well as his rights under 5 V.I.C. § 2512, I
respectfully dissent from the court's disposition of this appeal.
I would remand for further proceedings on the government's motion
to transfer A.M. for trial as an adult.

Walwyn interviewed A.M. about the alleged offense when
Walwyn knew that A.M. was represented by an attorney. Walwyn's
report to the Territorial Court was based primarily on that
interview. In his report, Walwyn, after reciting A.M.'s version
of what happened on the day of the alleged offense, drew the
following inferences:

> [A.M.] seems to be complacent and laid back
> about the entire affair. Initially, the
> young man did not fully understand the extent
> of the charges against him. Although he was
> later made aware of the extent of the
> charges, his attitude did not change.
> Additionally, he shows little remorse for
> what the alleged victim might be
> experiencing. He indicated that it is her
> fault that things are hard on her because she
> could have easily told the truth.

A.M. filed a "Motion to Strike" that asked the Territorial Court to suppress not only A.M.'s version of the offense as reported in Walwyn's report but also the evaluation and recommendation sections of that report. The motion and associated briefs requested that these latter segments of the report be suppressed because "both sections refer to the minor's alleged lack of remorse." App. 67. As A.M.'s brief explained to the court,

> Had the minor's attorney been present at the interview or had the minor heeded the attorney's [prior] instructions [not to discuss the case with anyone], no facts would have been elicited for the caseworker to presume that the minor should be displaying feelings of remorse (i.e. the minor's view of the incident).

App. 67.

The Territorial Court declined to suppress any portion of Walwyn's report. After a hearing, it granted the government's motion to transfer A.M. for trial as an adult. Although the court's findings do not specifically refer to A.M.'s attitude toward the alleged offense, the court relied on Walwyn's report and hearing testimony as a basis for concluding that a denial of the government's motion would provide no prospect for rehabilitation of A.M. and would afford inadequate protection for the public.

Under the Virgin Islands statute, as under the statute before the Supreme Court in Kent v. United States, 383 U.S. 541 (1966), a proceeding on a motion to transfer a juvenile for trial as an adult is a "critically important" proceeding. Id. at 560.

As a result, based on the teachings of In re Gault, 387 U.S. 1 (1967), I conclude that the Due Process Clause entitled A.M. to have his attorney present when he was interrogated by the state concerning the alleged offense.[9] Since the record provides no basis for finding that there was a knowing and voluntary waiver of this right by A.M., I can only conclude that Walwyn's questioning of A.M. without his attorney being present was unconstitutional. As the majority acknowledges, it also violated 5 V.I.C. § 2512.

Unlike my colleagues, I am unable to conclude that the failure to grant the motion to suppress was harmless error or that A.M.'s counsel, by asking too much relief, precluded A.M. from thereafter maintaining that less than the entire report should have been suppressed. It is clear from Walwyn's report and testimony that his conclusion concerning A.M.'s attitude toward the alleged offense was based on his interrogation of A.M. regarding the events of the day in question. That conclusion was thus fruit of a poisoned tree. Further, while it is conceivable to me that the Territorial Court gave no weight to Walwyn's conclusion regarding A.M.'s attitude, I consider that highly

_____

[9]. Section 3 of the Revised Organic Act of 1954 makes the Fifth and Sixth Amendments of the United States Constitution applicable in the Virgin Islands. A.M.'s Motion to Strike claims a right to counsel and cites the Sixth Amendment in support. It may be that the Sixth Amendment, being limited to criminal proceedings, is not applicable to a juvenile transfer proceeding. If it is not, however, I believe there is a right to counsel at that stage under the Due Process Clause of the Fifth Amendment. A.M.'s motion made clear to the Territorial Court that he claimed a constitutional right to counsel, and I would hold that this was sufficient to preserve the issue.

unlikely and am unwilling to assume an absence of reliance in the absence of express assurance from the Territorial Court. When asked to determine whether an individual accused or convicted of a crime can be rehabilitated or whether such an individual represents a threat to the public, courts normally and understandably rely on the available information regarding the individual's attitude towards the events in question and I believe it very likely that the Territorial Court did so here.

My colleagues correctly point out that A.M.'s counsel sought suppression of Walwyn's entire report. However, to the extent A.M.'s motion was based on the contention that Walwyn's interrogation violated A.M.'s right to counsel, the briefing made clear that A.M.'s concern was about the above-quoted conclusion that Walwyn reached concerning A.M.'s state of mind.

I would reverse the order of the Territorial Court and remand for further proceedings. If the Territorial Court is able to provide explicit assurance that Walwyn's evaluation of A.M.'s attitude played no role in its decision on transfer, I would permit the entry of a new transfer order. If the court is unable to give that assurance, a new study and report by another social worker would be necessary to provide an untainted basis for a new hearing on the government's motion to transfer.