# PEOPLE OF THE VIRGIN ISLANDS IN THE INTEREST OF
## J.G., a Minor

S. Ct. Crim. No. 2013-0025

Supreme Court of the Virgin Islands

July 5, 2013

PEDRO K. WILLIAMS, ESQ., NAMOSHA BOYKIN, ESQ., Law Offices of Pedro K. Williams, St. Thomas, USVI, *Attorneys for Appellant*[2].

HODGE, *Chief Justice*; CABRET, *Associate Justice*; HODGE, *Designated Justice*.[1]

## OPINION OF THE COURT

(July 5, 2013)

HODGE, *Chief Justice*. J.G., a minor, appeals from a March 9, 2013 Order issued by the Family Division of Superior Court of the Virgin

---

[2] The People of the Virgin Islands never filed a Notice of Appearance in this case. Nonetheless, they were served with all orders issued by this Court, including an April 23, 2013 Order that required them to file their brief on or before May 15, 2013. However, they did not submit a brief by that deadline. Instead, on June 10, 2013, the day before the matter was submitted for consideration, the People filed a motion to file the brief out of time, which the Court rejected in a June 11, 2013 Order.

[1] Associate Justice Ive Arlington Swan has been recused from this matter. Verne A. Hodge, a retired Presiding Judge of the Superior Court, sits in his place by designation pursuant to 4 V.I.C. § 24(a).

Islands, which directed that he be transferred to the Criminal Division. We reject his Fourth and Fifth Amendment challenges, and his argument that the Superior Court lacked jurisdiction or erred by remanding him to the custody of the Bureau of Corrections. Furthermore, we conclude that even if the trial court impermissibly took judicial notice of J.G.'s age, any error was harmless, and we hold that the trial court did not abuse its discretion by ordering the transfer. Consequently, we affirm.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE[3]

William Hyde was brutally beaten in the evening hours of November 23, 2012. He lapsed into a coma. His body was found in a shower stall at Magen's Bay beach on St. Thomas on the morning of November 24, 2012. (J.A. 103.) He had no identification on his person and his grey Dodge truck was missing. (J.A. 104-05.) On December 17, 2012, he was taken off life support and died at a hospital in Florida. The cause of death was determined to be blunt force trauma to the head. (J.A. 135-36.)

The police located Hyde's truck in the Anna's Retreat area of St. Thomas, and conducted surveillance in the vicinity of the vehicle. (J.A. 105.) On November 29, 2012, they saw a young black male — whom one of the detectives recognized and who was later identified as J.G.'s co-defendant, K.J.F. — approach the truck. (J.A. 105-06.) K.J.F. noticed the police, and turned around. (J.A. 106.) The next day, he returned to the truck and removed a black box. (J.A. 107.) Later, he came back with the key for the truck and opened the vehicle; at that time, he was arrested. (J.A. 107.)

Once K.J.F. was arrested and advised of his rights, he waived his right to silence and, in the presence of his parents, he gave the police a statement. (J.A. 107.) K.J.F. stated that his classmate, D.B., gave him the keys to the truck. (J.A. 108.) Initially he told the police that he did not know whose truck it was, but he later stated that the truck belonged to Hyde, and that Hyde was the boss of co-defendant N.C. (J.A. 108.) When K.J.F. was asked if he knew anything about Hyde being attacked, he stated that he did not, and that he and N.C. had been at a party at

---

[3] The facts are recited based on the evidence presented at the probable cause hearing in the Family Division on January 25, 2013. The defendants did not present any witnesses at the hearing.

Sapphire Beach on November 23. (J.A. 110.) The police later confirmed that while N.C. and K.J.F. did attend a party at Sapphire, the party was on November 24, not November 23. (J.A. 110.)

Based on this information, N.C. and D.B. were arrested at their school on December 10, 2012. (J.A. 35, 112.) At the time he was arrested, D.B. had two cell phones in his possession, one of which belonged to Hyde. (J.A. 113, 134.) With his mother and aunt present, N.C. gave the police a statement. (J.A. 113-14.) He told the police that his group of friends — himself, along with J.J.J., J.G., D.B. and K.J.F. — called Hyde and asked him to give them a ride to Magen's Bay beach. (J.A. 114.) He said that he and Hyde were in the area of the shower stall, talking, while the other minors remained in the truck. (J.A. 139.) Hyde began to touch him inappropriately, according to N.C. (J.A. 114.) N.C. became upset, he said, and started beating Hyde. (J.A. 114-15.) He punched him with closed fists, and then K.J.F. brought a BB gun from the truck and started beating Hyde with it on his face and his body. (J.A. 115.) N.C. indicated that J.J.J. and J.G. were not involved in the attack. (J.A. 115.) K.J.F. and N.C. put Hyde in the shower stall and they left the beach in Hyde's truck with J.G. and J.J.J. (J.A. 118.)

D.B. also waived his rights in the presence of this mother and provided the police with a statement. (J.A. 120.) He stated that he was with his friends — N.C., J.J.J., J.G. and K.J.F. — near the basketball court in Anna's Retreat in the evening of November 23, 2012. (J.A. 124.) J.J.J. had a BB gun with him and suggested that the group rob someone. (J.A. 125.) D.B. told police that N.C. then suggested, "Let's call my boss, let's kill him because he's old, gay and he [is] ready to die." (J.A. 125.) The minors all agreed, and N.C. called his boss, Hyde. (J.A. 125.) Hyde came to Anna's Retreat in his truck. (J.A. 126.) The minors pointed the BB gun at Hyde and forced him out of the truck. (J.A. 126.) They held N.C. around the neck to make it seem that N.C. did not know what was going on and was also being held against his will. (J.A. 127.) They got into Hyde's truck. J.G. drove, K.J.F. was in the passenger seat, and J.J.J. held the gun and sat in the middle of the back seat. (J.A. 127.) D.B. sat in the rear bed of the truck.[4] (J.A. 127.) According to D.B., J.J.J. and J.G. pulled Hyde out of the vehicle, brought him into the shower stall and started

---

[4] A video from security cameras at Magen's Bay confirmed that the truck entered the beach area with someone in the bed of the truck. (J.A. 127.)

beating and kicking him. (J.A. 128.) K.J.F. and N.C. then joined in the attack. (J.A. 128.) In addition to punching and kicking Hyde, D.B. said, they used the BB gun to beat him about his body.[5] (J.A. 128.) D.B. told the police that he did not participate in the attack and remained in the bed of the truck until the others returned. (J.A. 128.) While they were beating Hyde, D.B. said he heard him cry out in pain, "why are you doing this here to me?" (J.A. 129.) After the minors left the beach, they went home, changed, and went out to a nightclub. (J.A. 130.)

On December 11, 2012, the day after the police took D.B. and N.C.'s statements, they arrested J.J.J. (J.A. 131.) He declined to waive his rights and did not provide a statement. (J.A. 130-32.) The following day, J.G. was arrested at his school and he also declined to speak to the police. (J.A. 133.)

The court held an advisement of rights hearing on December 13, 2012. At the hearing, J.G. was represented by counsel. In response to the court's questions, he stated his full name and his birth date. The court clerk prepared a Memorandum Record of Proceeding, which summarized the advisement of rights proceeding. It listed certain identifying information, including J.G.'s birthdate. J.G. signed to acknowledge he had received a copy. He also surrendered his birth certificate and passport card pursuant to the court's orders.

The People then charged J.G. and the other minors with a number of offenses, the most serious of which was attempted first-degree murder. They also moved to transfer J.G. to the Criminal Division to be tried as an adult. After Hyde died on December 17, 2012, the People filed an Amended Complaint on January 18, 2013, charging J.G. with first-degree murder. (J.A. 18-25.) The court scheduled a hearing on the Motion to Transfer to be held on January 25, 2013. All of the minors appeared at the hearing. At the hearing, case agent Detective Steven Phillip testified about the course of his investigation and relayed the statements provided to the police by the minors. He also testified that his investigation revealed the ages of the defendants. He said K.J.F. was 17, and that he thought D.B.

---

[5] A slide for a BB gun — which Detective Phillip described as a piece on the top of newer versions of BB guns which "ra[tchets] back and forth like it's a real gun" — was found on the beach near the shower stall where Hyde's body was discovered. (J.A. 129.)

was "around 15. He was 16." (J.A. 136.)[6] He also testified that J.G. was 14 at the time of the attack, N.C. was 17, and J.J.J. was 17. (J.A. 137.) When asked how he obtained this information, Detective Phillip testified that he had obtained it from the minors themselves and from their parents. (J.A. 137.)

Detective Phillip also testified that they discovered a video on K.J.F.'s cell phone, which appeared to be taken from inside a vehicle with a grey interior on November 23, 2012. (J.A. 145.) It showed K.J.F., N.C., and D.B. celebrating after the attack, and there was some sort of firearm visible. (J.A. 143.)

The People called K.J.F.'s mother who confirmed that he was 17 at the time of the attack. (J.A. 163.) Likewise, D.B.'s mother testified that he was sixteen. (J.A. 165.) When the People called J.G.'s mother, she asserted her Fifth Amendment rights. (J.A. 165.) The People objected, arguing that her testimony would not risk incriminating her. (J.A. 166.) The court stated that, "we certainly can't force [her] to testify,[7] so we'll let the record speak for itself. The [c]ourt will take judicial notice of her son's age." (J.A. 167.) The court indicated it would take judicial notice based on the record. After J.G.'s mother was excused, the court asked the People if there was anything they wanted to put on the record as to J.G.'s age, and the People responded, "In terms of documents?" (J.A. 168.) The People then noted that the Memorandum Record of Proceeding from the

---

[6] The testimony regarding the minors' ages in the Joint Appendix is entirely redacted. However, with reference to the full, unredacted transcripts on file with this Court, it is possible to discern what Detective Phillip's testimony was regarding their ages.

[7] This conclusion is incorrect. The court can certainly force someone to testify, by way of a threat of contempt, if the Fifth Amendment — or some other relevant privilege — would not apply to their testimony. 14 V.I.C. § 581(3) (permitting the court to punish by contempt a refusal to abide by an order of the court, such as an order to testify). As there is no indication on the record that J.G.'s mother was going to be asked anything that could incriminate her, the court should, at the very least, have inquired further to determine whether her testimony would fall within the scope of the privilege. *See Hale v. Henkel*, 201 U.S. 43, 69, 26 S. Ct. 370, 50 L. Ed. 652 (1906), *overruled in part on other grounds by Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964) ("The right of a person under the 5th Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person."). However, the People did not appeal this ruling. Indeed, they have not participated at all in this appeal.

December 13, 2012 hearing indicated that J.G. was born on a date that would make him fourteen at the time of the attack. (J.A. 168.)

Likewise, J.J.J.'s mother invoked her Fifth Amendment right and declined to testify as to his birthdate. (J.A. 171-72.) Over J.J.J.'s objection, the court took judicial notice of birthdate as it was listed on the Memorandum Record of Proceeding from the December 13, 2012 hearing, and also on the police's "contact card" for J.J.J. (JA. 173.) That birthdate would indicate that J.J.J. was 17 at the time of the attack. (J.A. 172-73.)

N.C.'s mother — when called to provide age evidence for N.C. — also asserted her Fifth Amendment rights, and over counsel's objection, the court took judicial notice of his birthday as listed on the contact card and Memorandum Record of Proceeding. According to that birthdate, N.C. was 17 at the time of the attack. (J.A. 175.)

At the conclusion of the hearing, the court took the matter under advisement and permitted the parties to supplement their arguments in writing. The court reconvened the hearing on February 28, 2013. It stated on the record that it found probable cause and that all of the minors were fourteen or older, but younger than eighteen, at the time of the offense, taking judicial notice of the documents in the court's file. It also ordered the minors to be committed to a Youth Rehabilitation Center on St. Croix. It memorialized these decisions in a Transfer Order issued on March 9, 2013, from which J.G. appeals. We note that while two of J.G.'s codefendants have received a stay of the Transfer Order while their appeals proceed, there is no indication on the record that J.G. has done so.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

#### 1. Supreme Court Jurisdiction

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). An order transferring a juvenile from the Family Division to the Criminal Division of the Superior Court is a final, appealable order. 5 V.I.C. § 2508(d); *In re S.T.*, 51 V.I. 420, 422 (V.I. 2009).

## 2. Superior Court Jurisdiction

J.G. contends that the Superior Court lacked jurisdiction over his case because the Amended Complaint filed by the People was not "verified." He relies on section 2510(a) of Title 5 of the Virgin Islands Code, which states

> Complaints *shall be verified* and may be signed by any person who has knowledge of the facts alleged. All complaints shall be prepared and countersigned by the Attorney General before they are filed with the court. Decisions of the Attorney General on whether to file a complaint shall be final.

5 V.I.C. § 2510(a) (emphasis added).

As an initial matter, although J.G. repeatedly refers to the trial court as lacking "jurisdiction," he does not explain why section 2510(a) — which may be mandatory — should be construed as a *jurisdictional* provision. We have recently held that the Legislature's inclusion of a mandatory requirement in a statute does not automatically render the requirement jurisdictional. *Brooks v. Gov't of the V.I.*, 58 V.I. 417 (V.I. 2013). Instead, we must consider whether there is "clear" evidence of the Legislature's intent to deprive the court of jurisdiction if the requirement is not met. *Id.*

With respect to section 2510, J.G. presents *no* evidence of the Legislature's intent to make the verification requirement jurisdictional, and this Court can find none. *In re A.M.*, 34 F.3d 153, 158, 30 V.I. 442 (3d Cir. 1994) (referring to the requirement as one of "formal correctness"). Section 2510(a) is not within a section of the Code addressing the jurisdiction of the Family Division specifically or the Superior Court in general. *Cf.* 4 V.I.C. § 172(a)(4) (granting original jurisdiction to the Family Division over any child "alleged to have committed a delinquent act within the territory"). There is no language in the section suggesting that the court would lose jurisdiction over the complaint if the verification requirement is not met. Furthermore, dismissing a case because of a mere formality would contradict the Children's Policy for the Territory, which is to emphasize "public safety and deterrence," and to ensure that children learn "through the imposition of sanctions that delinquent behavior will not be excused." 5 V.I.C. § 2501(c); *see also* 5 V.I.C. § 2501(h) (requiring the courts to construe the laws relating to delinquency in a manner that

will "carry out the intent and purpose of the Children's Policy"). Because there is no evidence that the Legislature intended the verification requirement in section 2510(a) to be a jurisdictional requirement, we conclude that the failure to verify a complaint does not deprive the Family Division of jurisdiction over the complaint.

 Although it is not a jurisdictional requirement, the verification condition remains a mandatory one. Consequently, we consider whether the Attorney General's failure to verify the Amended Complaint was harmless.[8] V.I.S.Ct.R. 4(i). Here, we conclude that it was harmless. J.G. does not suggest how he may have been prejudiced by the absence of verification. He indicates that it would be important to have the Amended Complaint verified because Detective Phillip testified at the probable cause hearing but neither he nor the Attorney General had personal knowledge of the facts alleged in the Amended Complaint. However, it is clear that a witness need not have personal knowledge in order to testify at a probable cause hearing but may instead rely on hearsay.[9] *In re A.M.*, 34 F.3d at 160-62. Furthermore, even if the probable cause fact sheet was deficient, Phillip testified under oath to the same facts recited in the Amended Complaint, and the court found probable cause based on this testimony after an evidentiary hearing, thus curing any issues arising from the lack of verification. Under these circumstances, we decline J.G.'s invitation to reverse the Transfer Order on the basis of the People's failure to verify the Amended Complaint.

## 3. Standard of Review

The Court reviews the Superior Court's factual findings for clear error and exercises plenary review over the Superior Court's application of the law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I.

---

[8] Because J.G. raised this argument below, (Appellant's Br. 2), the Court reviews not for plain error, but merely to determine whether any error was harmless.

[9] Indeed, it will be a rare case where at a probable cause hearing an officer testifies as to his personal knowledge of the crime, since criminals rarely commit crimes within the sight and sound of police officers. In addition, we note that, by operation of Rule 1101(d)(3) of the Federal Rules of Evidence, those rules "generally are not applicable at preliminary hearings"; it is for this reason that "a probable cause finding may be based, in whole or in part, on hearsay evidence," such as police officers will most often provide. *See United States v. Hilario*, CR Nos. 1:09-M-167A, 1:09-M-169A, 2009 U.S. Dist. LEXIS 81643, at *3-4 (D.R.I. Sept. 9, 2009) (involving affidavits and testimony of DEA agent and other investigators).

322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Where an appellant fails to object to a Superior Court order or decision, the Court reviews for plain error. V.I.S.Cт.R. 4(i) *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011). " 'Because the decision to transfer a juvenile for prosecution as an adult is committed to the sound discretion of the trial court, we review that decision only for an abuse of discretion.' " *In re S.T.*, 51 V.I. 420, 422 (V.I. 2009) (quoting *United States v. A.R.*, 38 F.3d 699, 702 (3d Cir. 1994)).

## B. Custody Placement

J.G. challenges the trial court's Transfer Order in part because it committed him to the custody of the Commissioner of the Department of Human Services (DHS), to be held at the Youth Rehabilitation Center (YRC) in St. Croix. Section 2509(g) of title 5 states in relevant part:

> If the Attorney General's motion for transfer pursuant to section 2508(d) of this chapter is granted, and the child offender has been detained or is subsequently detained, the child offender *shall be placed in the custody of the Bureau of Corrections*. Such pre-trial detention of the child offender shall be separate and apart from the adult inmate population.

5 V.I.C. § 2509(g) (emphasis added).

Upon granting the Motion to Transfer, the Family Division ordered that J.G. be "**COMMITTED** to the custody the Commissioner of the Department of Human Services to be placed at the Youth Rehabilitation Center pending a detention hearing to be scheduled by the Criminal Division of this Court." (J.A. 10.) J.G. argues that the order violates section 2509(g) because it committed him to the custody of DHS, rather than the Bureau of Corrections.

We will not consider J.G.'s challenge to his custody because it has been mooted. In an Order dated May 30, 2013, and transmitted to this Court by J.G.'s counsel on June 4, 2013, a judge of the Criminal Division[10] has

---

[10] While J.J.J. and K.J.F. obtained orders staying their transfer, J.G. apparently never moved for such an order, and so his case has proceeded to the Criminal Division.

released J.G. on an unsecured bond with home confinement and electronic monitoring. Consequently, J.G.'s argument that he was being impermissibly confined to the Youth Rehabilitation Center — rather than the Bureau of Corrections — is now moot.

## C. Proof of Age

### 1. *Fifth Amendment*[11]

J.G. argues that he was forced to incriminate himself when he responded to the police's request for biographical information, such as his age, and when he provided his birthdate in response to the judge's question at the probable cause hearing.[12] We reject this argument because the disclosure of his age is not a statement that could reasonably incriminate J.G.

---

[11] There is a question as to whether the Fifth Amendment applies in juvenile transfer hearings. *Commonwealth v. Brown*, 2011 PA Super 47, 26 A.3d 485, 494-95 (2011) (acknowledging the split in authority and collecting cases, ultimately adopting what it referred to as the majority view that the Amendment does apply to these proceedings); *cf. Application of Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (stating that the Fifth Amendment privilege against self-incrimination is applicable to proceedings to adjudicate a juvenile delinquent, but not addressing transfer proceedings). We need not resolve this question because, even if the Amendment does apply, J.G. is not entitled to relief.

We focus our analysis on the Fifth Amendment, and do not need to consider the statutory provision relied upon by J.G. in his brief. J.G. cites 5 V.I.C. § 862, which establishes that the privilege against self-incrimination is not defeated by erroneously compelled testimony, or under circumstances in which the claimant had no opportunity to claim it. (Appellant's Br. 15.) But that simply reflects the law as it has developed under the Fifth Amendment. *See Ziang Sung Wan v. United States*, 266 U.S. 1, 14, 45 S. Ct. 1, 69 L. Ed. 131 (1924) ("[A] confession obtained by compulsion must be excluded . . . ."); *United States v. Cook*, 678 F. Supp. 1292, 1297 (N.D. Ohio 1987) (concluding that because the statements were obtained in violation of the right against self-incrimination, court had "no choice but to prohibit the use of such evidence at trial"); *People v. Parker*, 189 Colo. 370, 541 P.2d 74, 75 (1975) (finding waiver because appellant had opportunity to invoke privilege but did not). Consequently, we analyze J.G.'s claim under the rubric of the Fifth Amendment and the case law interpreting it.

[12] It is not clear whether J.G. actually made any comments to the police regarding his age or birthdate. Detective Phillip stated in general terms that he obtained information relating to the minors from "them, and also their parents." (J.A. 137.) If the parents provided this information, there is no self-incrimination issue; the issue only arises if J.G. actually provided this information himself, and there is nothing in the record to clarify this question. Nonetheless, because we find that there was no Fifth Amendment violation even if he did provide this information himself, we can proceed on the assumption that J.G. told the police his own age and birthdate.

▮▮▮Age is not an element of any of the offenses charged against J.G., nor will the disclosure of his birthdate lead to the discovery of proof of the crimes that may be used against him. *Cf. Blau v. United States*, 340 U.S. 159, 161, 71 S. Ct. 223, 95 L. Ed. 170 (1950) (indicating that a response can be incriminating even if it does not directly inculpate a suspect, such as when it would furnish a link in the chain of evidence needed to prosecute the person). As such, any evidence as to his age does not incriminate J.G. as having committed this or any other crime. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990) (concluding that questions seeking biographical information — such as date of birth — at the time of booking fall outside the protections of *Miranda* and the Self-Incrimination Clause of the Fifth Amendment).

▮▮It is true that the minor's age is relevant to the question of whether he would be transferred to the Criminal Division to be tried as an adult. Certainly, such a transfer has implications for his exposure to longer potential sentences.[13] However, the Supreme Court has stated that if the government can "readily establish" a fact, the testimony concerning it is "insufficiently incriminating." *Baltimore City Dep't of Social Servs. v. Bouknight*, 493 U.S. 549, 555, 110 S. Ct. 900, 107 L. Ed. 2d 992 (1990) (citing *Fisher v. United States*, 425 U.S. 391, 411, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)). Here, the People could have simply introduced,

---

[13] The transfer results in a minor potentially receiving a longer sentence, because he can only be detained until the age of 19 if prosecuted in the Family Division, whereas he could potentially receive life imprisonment if he is tried and convicted in the Criminal Division for first-degree murder. 5 V.I.C. § 2521(c).

Although a determination of age can lead to transfer to the Criminal Division, which could result in a longer sentence, it is not considered an element that is required to be proved to a jury beyond a reasonable doubt. In fact, courts have routinely permitted judges to make decisions as to facts relevant to transfer, suggesting these procedures fall outside the strictures of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *See State v. Kalmakoff*, 122 P.3d 224, 227 (Alaska Ct. App. 2005) ("[A]ll [but one] of the [] decisions that we have found conclude that the reasoning of *Apprendi* does not apply to juvenile waiver proceedings."); *State v. Andrews*, 329 S.W.3d 369, 374-75 (Mo. 2011) (en banc) (stating that "courts in every jurisdiction . . . that have considered this issue have concluded that *Apprendi*'s rule does not apply to juvenile transfer or certificate proceedings and that there is no right to a jury determination respecting the transfer of a juvenile's case to a court of general jurisdiction."). Consequently, we can conclude that the age requirement in section 2508(b) is not an element that is required to be proved to a jury beyond a reasonable doubt.

authenticated, and relied on J.G.'s passport or birth certificate to demonstrate his age. Consequently, the question of J.G.'s age did not implicate him in any crimes and, even if it did, the information communicated in his answer to the question was "readily establish[able]" and so the questions directed to J.G. by the court and the police did not violate the Fifth Amendment.

██ To the extent that J.G. argues that producing his birth certificate and passport violated his Fifth Amendment right against self-incrimination, the United States Supreme Court has forestalled such an argument. In *Fisher*, the Supreme Court stated that the production of documents does not necessarily implicate the Fifth Amendment, for the Fifth Amendment is concerned with testimonial communications. For this reason, the compelled production of documents such as passports, which are neither prepared nor owned by the defendant, does not violate the Self-Incrimination Clause. *In re Grand Jury Subpoena Duces Tecum (Passports) Dated June 8, 1982*, 544 F. Supp. 721, 723-24 (S.D. Fla. 1982).

## 2. Fourth Amendment

██ At the conclusion of the December 13, 2012 advisement of rights hearing, the court directed J.G. to produce his passport and other "identification or travel documents." (J.A. 57-58.) J.G. argues for the first time on appeal that this constituted an impermissible search and seizure in violation of the Fourth Amendment. (Appellant's Br. 24.) Because J.G. did not raise this argument below, the Court would typically review for plain error. However, instead we decline to address the issue because J.G. has provided no authority or discussion relating to the Fourth Amendment in his brief. *In re Morton*, 56 V.I. 313, 320 (V.I. 2012) ("[T]he complete failure to direct this Court to any relevant case law, standing alone, itself justifies a denial of [a mandamus] petition") (citing V.I.S.Ct.R. 22(m). Indeed, J.G. mentions the Fourth Amendment only twice in his brief, and the second reference consists of the statement that "no seizure of physical evidence occurred in this case." (Appellant's Br. 14.) J.G. cites no authority discussing the Fourth Amendment in the context of juveniles — or any defendants — surrendering their identification or other documents

at the time of their arraignment. For this reason, we consider the Fourth Amendment argument waived.[14]

## 3. *Judicial Notice*

### a. *Required Proof of Age*

The Legislature has mandated that minors who commit serious, violent offenses such as first-degree murder must have their cases transferred from the Family Division to the Criminal Division to be tried as adults. Specifically, section 2508(b) of title 5 of the Virgin Islands Code provides in relevant part as follows:

> (b) If a child or adult is charged with an offense which would be a felony if committed by an adult, and the child or adult was fourteen years of age or older at the time of the alleged offense, the Family Division of the Superior Court, after a determination of probable cause, *shall* transfer the person for proper criminal proceedings to a court of competent criminal jurisdiction when: . . .
>
> (4) the offense now charged is one of the following offenses, which would be a felony if committed by an adult: murder in the first degree or an attempt to do so . . . .

5 V.I.C. § 2508(b) (emphasis added).[15]

---

[14] Even if we addressed the argument, we would conclude that there was no plain error. There are no cases binding on the Superior Court holding that it violates the Fourth Amendment to require juveniles being arraigned by the Family Division to produce travel documents and identification, such as a birth certificate and passport. The Fourth Amendment does not prohibit all seizures, nor does it require a warrant for each one. Instead, it simply prohibits seizures that are unreasonable. U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated . . . ." (emphasis added)); *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960). Because there is no such authority in this regard, even if the trial court erred by demanding these documents, any such error was not "plain." *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is clear under current law, and thus "there can be no plain error where there is no precedent . . . directly resolving it.") (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)).

[15] Arguably, subsection 2508(d) could apply rather than 2508(b). But in a well-reasoned opinion, the Superior Court ruled that the 1994 amendments to this Chapter, which added subsection 2508(b)(4), demonstrated the Legislature's intent that if a minor is subject to 2508(b)(4) by virtue of having been charged with an enumerated offense such as first-degree

361

In its January 25 and February 28 hearings, the trial court received evidence as to the existence of probable cause that the minors committed the alleged crimes, and as to the age of the minors. As discussed below, the trial court did not err in finding probable cause that the crimes were committed, and that the minors committed them. However, the court must determine whether there was sufficient evidence that J.G. was age 14 years or older but younger than 18 at the time of the offenses and whether the trial court committed reversible error by taking judicial notice of facts in the court record as to his age.

As an initial matter, the trial court did not state, and the statute does not establish, the legal burden of proof as to the minor's age. If age was an element of the offense, and if the proceeding was a final proceeding to adjudicate the minor's guilt, there is no question that the child's age would have to be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364-68, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (deciding that, at the adjudicatory stage of a juvenile delinquency proceeding, the government must prove beyond a reasonable doubt every fact necessary to establish the charged offense).

 Here, however, age is not an element of any of the crimes charged against J.G., and the proceedings were preliminary transfer hearings, rather than final proceedings to determine guilt. Consequently, the standard may be other than the beyond-a-reasonable-doubt standard. *State v. Read*, 397 N.J. Super. 598, 938 A.2d 953, 959-60 (2008) (applying a transfer statute similar to section 2508(b) and stating that "the requirement of jury fact-finding based on proof beyond a reasonable doubt does not apply to a pretrial determination such as whether to waive a complaint against a juvenile to adult court"). New Jersey and Minnesota apply a preponderance standard to the determination of the minor's age at a transfer hearing. *In re R.L.*, No. FJ-06-1777-07, 2008 N.J. Super. Unpub. LEXIS 323 (N.J. Super. Ct. App. Div. Dec. 8, 2008) (unpublished); *State v. Ali*, 806 N.W.2d 45, 50-54 (Minn. 2011) (noting that defendants often have superior information about their age and birthdates, and thus a preponderance standard is appropriate). Similarly, California requires that a defendant seeking certification to the juvenile

murder, then the transfer is mandatory and subsection 2508(d) is moot. *In re N.G.*, 32 V.I. 73 (V.I. Terr. Ct. 1995). We adopt this reasoning. In such cases, the court must still determine probable cause. 5 V.I.C. § 2508(b).

division as a minor must show by a preponderance of the evidence that he is under the age of 18. *People v. Nguyen*, 222 Cal. App. 3d 1612, 272 Cal. Rptr. 523, 526 (1990); *United States v. Garcia-Flores*, 925 F.2d 1471 (9th Cir. 1991) (unpublished). Under federal law, the government bears the initial burden of proving age, but must only make a prima facie showing, after which it is the defendant's burden to disprove. *United States v. Juvenile Male*, 595 F.3d 885, 897 (9th Cir. 2010).

Some states have determined that age need not be proved at all, unless the minor specifically challenges the authority of the court on the basis of his age. See *Nguyen*, 272 Cal. Rptr. at 526 (noting that if a defendant challenges the authority of the adult division to hear his case, he bears the burden of establishing his minority, since he is the party making the motion); *In re Greene*, 76 Ill.2d 204, 215, 390 N.E.2d 884, 28 Ill. Dec. 525 (1979) (stating that general denials to the authority of the court were insufficient and defendant must specifically contest age, since "age is not an element which the State must prove"); *cf. In re T.T.*, 2010 Ohio 5148 (2010) (unpublished) (finding that state did not prove that it was more likely than not that the defendant was the requisite age to transfer where the only evidence as to the minor's age was a police officer's testimony, which the officer qualified by saying, "I'm not exactly positive [as to the birthdate]"); *Matter of A.D.D.*, 974 S.W.2d 299, 302-04 (Tex. App. 1998) (concluding that the court did not need proof of minor's age at adjudicatory hearing, and the court had jurisdiction over the minor if, at the time of the judgment, there was evidence in the record as to the minor's age); *cf. State v. Rojas*, 85 Wash. App. 1030 (Wash. Ct. App. 1997) (unpublished) (stating that where the defendant had told a police officer he was an adult, and thus gave the government "a reasonable basis to believe he was an adult," he then bore the burden of production to demonstrate that he. was actually a juvenile and thus amenable to the juvenile court's jurisdiction).

 Considering this persuasive authority, we hold that once the People present prima facie evidence at a transfer hearing that a defendant was 14 years or older but less than 18 at the time of the alleged offense, the burden of production then shifts to the minor to disprove the People's evidence. Should the minor produce such evidence, the burden of persuasion will remain with the People to convince the court by a preponderance of the evidence that the defendant is the age the People allege. This approach preserves judicial and public resources because the

363

case may proceed so long as the People present some credible evidence of the minor's age; yet, if the defendant can show that the People's evidence is incorrect and that he is not amenable to transfer, the court can decide whether a preponderance of the evidence shows that the People's evidence as to the minor's age is convincing. This approach avoids the delay of interlocutory appeals based on proof of age where the defendant has no evidence to show that he is not the age alleged. It balances the concern regarding transferring an ineligible minor to the Criminal Division with the fact that the minor is in the best position to produce evidence of his age. *See United States v. Alvarez-Porras*, 643 F.2d 54 (2d Cir. 1981) (referencing "the parties' relative access to pedigree information"). If the Family Division makes a mistake as to the child's age which results in an impermissible transfer, the Criminal Division is required to "forthwith transfer the case" to the Family Division, thus ensuring that the minor is protected in case he is unable to demonstrate his age until some point after the transfer hearing. 5 V.I.C. § 2507(a)(2).

### b. *Rule 201 of the Federal Rules of Evidence*

 Rule 201 of the Federal Rules of Evidence — which the Virgin Islands has adopted — permits courts to take judicial notice of certain facts. Judicial notice — an evidentiary mechanism by which the proponent is relieved of its duty to prove an adjudicatory fact through normal evidentiary means — is only appropriate when the fact "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

 We have ruled that a "trial court may take judicial notice of the existence of a document that has been filed with it, [but] it may not assume, through judicial notice, that the contents of those documents are true unless the other requirements for judicial notice are met . . . ." *Farrell v. People*, 54 V.I. 600, 616 & n.13 (V.I. 2011) (citing cases). Here, the court took judicial notice of J.G.'s age based on the Memorandum Record of Proceeding, prepared by a court clerk, which indicated that J.G. had stated his age under oath at the advisement of rights hearing, and also based on the birth certificate which J.G. surrendered to the court after the advisement of rights hearing.

■ J.G. argues that the trial court violated Rule 201 when it took judicial notice of a disputed fact — his age — as reflected in the documents in the court file. We conclude that, even if the trial court erred by taking judicial notice of J.G.'s age,[16] any error was harmless. As noted above, the People were only required to present prima facie evidence of a minor's age in order to qualify the matter for transfer to the Criminal Division. Such prima facie proof would "establish a fact . . . unless contradictory evidence is produced." BLACK'S LAW DICTIONARY 638-39 (9th ed. 2009).[17] Here, the People presented the testimony of Detective Phillip — the case agent — who testified that J.G. was 14 at the time of the incident.[18] J.G. did not present any evidence to contradict Detective

---

[16] Because we would find any error harmless, we need not reach the question of whether there was any error at all, but if we did, we would find none. J.G.'s age is "not subject to reasonable dispute," because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Passports issued by the United States government, and certified copies of birth certificates issued by the Government of the Virgin Islands, are both "sources whose accuracy cannot reasonably be questioned." *N.P. v. Commonwealth*, No. 2002-CA-001781-MR, 2004 Ky. App. Unpub. LEXIS 457 (Ky. Ct. App. Jan. 16, 2004) (unpublished); *cf. Johnson v. Morgenthau,* 160 F.3d 897, 898 (2d Cir. 1998) ("In this case, no party has suggested Johnson's death on the record. But because Johnson's sister-in-law has provided the Court with a copy of Johnson's death certificate, we may take judicial notice of the fact that Johnson is dead."); *United States v. Mfrs. Hanover Trust Co.*, 229 F. Supp. 544, 545 (S.D. N.Y. 1964) (taking judicial notice of the fact of death based on a death certificate on file with the appropriate agency). Pursuant to Rule 201, J.G. was free to challenge the authenticity of the documents or their accuracy as to his age. However, merely stating that the documents *could* be wrong — without more — does not constitute a reasonable questioning of the accuracy of the sources. No participant in the proceeding below gave the court any real cause to believe that these documents — which were surrendered by J.G. himself — were not authentic or accurate. Without such proof, or even a specific challenge, the trial court could find that the documents were "sources whose accuracy [as to J.G.'s age could ]not reasonably be questioned." FED. R. EVID. 201(b); *see Menominee Indian Tribe of Wisconsin v. Thompson*, 943 F. Supp. 999, 1005 (W.D. Wisc. 1996) (noting that a party challenging the taking of judicial notice should "point[] out" its specific disagreements as to the authenticity or accuracy of the source).

[17] The dictionary goes on to quote John H. Wigmore, A STUDENTS' TEXTBOOK OF THE LAW OF EVIDENCE 237 (1935), explaining that " 'prima facie evidence' . . . does not shut out evidence, but merely declares that certain conduct shall suffice as evidence until the opponent produces contrary evidence." BLACK'S LAW DICTIONARY 639 (9th ed. 2009).

[18] Detective Phillip learned of this information from the minors and their parents. If J.G. himself told Detective Phillip his age, the statement would be directly admissible as an admission. If J.G.'s parents gave the Detective this information, it would be hearsay. However, hearsay is admissible in juvenile transfer proceedings. *In re A.M.*, 34 F.3d 153, 160-62, 30 V.I. 442 (3d Cir. 1994) (considering Rule 1101(d)(3) of the Federal Rules of Evidence).

Phillip's testimony about his age, and in fact never even argued that he was anything other than 14 at the time of the attack. Consequently, presented with uncontested prima facie evidence, the court would have been required to accept Detective Phillip's testimony as to J.G.'s age. *See United States v. Hasan*, 747 F. Supp. 2d 642, 673-74 (E.D. Va. 2010) (stating that where evidence showed defendant told juveniles he was an adult, government had presented prima facie evidence for prosecution as an adult); *cf. Matter of Welfare of D.T.N.*, 508 N.W.2d 790, 794 (Minn. Ct. App. 1993) (only when a minor "rebut[s] the prima facie case by sufficient evidence" must the court weigh the evidence and consider the totality of the circumstances in deciding whether to try the child as an adult). Therefore, even if it had never taken judicial notice of the minors' age, the evidence presented at the hearing established J.G.'s amenability to transfer under the provisions of section 2508(b).

## D. Probable Cause

The government has established probable cause pursuant to section 2508(b) when the court finds that the facts and circumstances would warrant a prudent person in believing that the crime has been committed and that the minor committed the charged crime. *In re N.G.*, 119 F. Supp. 2d 525, 528 (D.V.I. App. Div. 2000). Here, the evidence supports the trial court's finding that there was probable cause to believe that J.G., along with the other minors, committed the charged crimes.

██ The statements taken from the minors are not entirely consistent, but they generally indicate that the minors telephoned Hyde in order to get him to pick them up in Anna's Retreat, supporting the trial court's finding that J.G., along with the others, "planned to call Mr. Hyde."[19] (J.A. 8, 125.) D.B. — a minor who had in his possession at the time of his arrest a cell phone belonging to Hyde — told the police that N.C. precipitated the phone call by suggesting to the other minors that they call Hyde and "kill him because he's old, gay and he [is] ready to die." (J.A.

---

[19] It should be noted that section 2512 of title 5 prohibits the use of statements obtained from a child while in custody unless the People prove to the court's satisfaction that the child was informed of his rights and understood them, that he was not coerced, and that a parent, attorney or a friendly adult was present when the statement was made. J.G. does not argue that this statute was violated when D.B. or N.C. gave statements implicating him, and we will therefore not reach the issue. V.I.S.CT.R. 22(m).

125.) The minors then brought Hyde to the beach at gunpoint. (J.A. 126.) The evidence further supports the court's conclusion that, once there, each minor "either beat [Hyde] or saw him beaten." (J.A. 9.) While N.C. denied that J.G. was involved in the attack (J.A. 115), D.B. stated that J.G. drove Hyde and the other minors to the beach, pulled Hyde out of his truck, brought him to the shower stall, and began to beat and kick him. (J.A. 128.) The court was entitled to give credit to D.B.'s statement over the statement made by N.C. Later, the minors — including J.G. — left Hyde to die, and departed the beach in Hyde's truck, with his cell phone in their possession. The evidence also established that Hyde's truck was worth more than $100. (J.A. 111.)

The Court concludes, therefore, that there was sufficient evidence for a reasonable person to believe that J.G. committed murder in the first or second degree, assault in the third degree, possession of a dangerous weapon during the commission of those crimes of violence, grand larceny, possession of stolen property, false imprisonment and unauthorized use of a vehicle — either as a principal or as an aider and abettor — and that he is therefore amenable to transfer to the Criminal Division.

## III. CONCLUSION

The trial court correctly found that there was probable cause that J.G. committed the charged crimes and, even if it erred by taking judicial notice of J.G.'s age, any such error was harmless, because the evidence presented by the People regarding his age was uncontested. J.G.'s challenge to the order remanding him to the custody of the Department of Human Services is now moot. His Fifth Amendment challenge is meritless and his Fourth Amendment challenge is waived. For these reasons, we affirm the March 9, 2013 Transfer Order, and remand the case for further proceedings.